**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

DECORATIVE COMPONENTS
INCORPORATED, INC., et al.,                    :

    Plaintiffs,                                  :

v.                                               :              MC 1:12-00007-KD-C

ICON COMPUTING SOLUTIONS, INC.
d/b/a ICON PARETO,                              :

    Defendant.                                   :

## ORDER

Pending before the undersigned for consideration are the plaintiffs' petition for fees and expenses associated with compelling the defendant's cooperation with post-judgment discovery (Doc. 22), brought against the defendant's counsel, R. Edward Massey, Jr., Esq., individually, and filed October 2, 2012 pursuant to the Court's September 18, 2012 Order (Doc. 21), and Mr. Massey's response (Doc. 23), filed October 9, 2012.[1]  For the reasons set forth herein, pursuant to Rule 37(a)(5)(A), it is **ORDERED** that Mr. Massey shall pay the plaintiffs **$847.75** in "reasonable expenses incurred in making [their August 3, 2012 Motion to Compel (Doc. 4)], including attorney's fees." FED. R. CIV. P. 37(a)(5)(A).

## Background and Underlying Action

The defendant's response briefly summarizes the events that led to the enforcement action being filed in this Court (*see* Doc. 23 at 2): Georg Bangs lead a "growing and prospering business[,]" ICON, which continued to grow

> until 2009[,] when Mr. Bangs[, ICON's CEO,] made a decision to purchase Infologix, a NASDAQ company that produced medical carts.  One of ICON's major suppliers in connection with the Infologix transaction was

---

[1]       This post-judgment enforcement action against the defendant is currently stayed pursuant to 11 U.S.C. § 362(a)(1).  (*See* Doc. 21.)

> DCI/Brillcast[—the plaintiffs/judgment debtors].    To say that this
> decision was a disaster would be an understatement.    The company,
> according to Mr. Bangs, spent a large sum of money trying to extricate
> itself from this endeavor[,] which included getting sued by certain
> contract manufacturers, of which DCI/Brillcast was the largest.
>
> The company simply ran out of resources and consented to Default
> Judgments in most of these cases.

(*Id.*)

DCI and Brillcast filed their suit against ICON in the United States District Court for the Western District of Michigan on December 9, 2010 (*see* Doc. 1-1, compl.), and a judgment by default was entered against ICON, in the amount of $3,449,132.21, exclusive of any post-judgment interest or future costs, on January 26, 2012 (*see* Doc. 1). Mr. Massey did not appear as counsel for ICON in the Western District of Michigan Lawsuit.

<u>Enforcement Procedure in this Court</u>

The Western District of Michigan Judgment was registered in this Court on April 9, 2012 (*see* Doc. 1), and a notice that DCI and Brillcast had served ICON with their first post-judgment interrogatories and requests for production of documents was filed on May 21, 2012 (*see* Doc. 3).

> [A] party who possesses a prior judgment obtained in a federal district
> court may attempt to enforce that judgment in another federal district
> court by registering the judgment with that court [pursuant to 28 U.S.C. §
> 1963, which, in relevant part, provides that "[a] judgment in an action for
> the recovery of money or property entered in any . . . district court . . . may
> be registered by filing a certified copy of the judgment in any other district
> . . . when the judgment has become final by appeal or expiration of the
> time for appeal or when ordered by the court that entered the judgment
> for good cause shown."]
>
> .            .            .
>
> 28 U.S.C. § 1963 [further] provides that the "judgment so registered shall
> have the same effect as a judgment of the district court of the district
> where registered and may be enforced in like manner."  This means that
> an out-of-district, registered judgment "ha[s] the same effect, and [is]

entitled to the same protection, as if it had been entered in [the registered district] in the first instance."

*CSX Transp., Inc. v. Filco Carting Corp.*, No. 10–CV–1055 (NGG)(JMA), 2011 WL 2713487, at *1 & *2 (E.D.N.Y. July 11, 2011) (quoting *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 500 F.3d 111, 121 (2d Cir. 2007)).

And Rule 69(a)(2) provides that, "[i]n aid of the judgment or execution, the judgment creditor . . . may obtain discovery from any person—including the judgment debtor—as provided in [the Federal Rules] or by the procedure of the state where the court is located." *Id.*

On August 3, 2012—more than two months after service of the discovery requests—the plaintiffs, pursuant to Rule 37(a)(3)(B), filed a motion to compel responses from ICON (Doc. 4); the motion also details their efforts to obtain responses from ICON without Court intervention.  The undersigned granted the motion via an endorsed order entered on August 5, 2012 (Doc. 5), which explained,

> It is clear from the motion and the court record that the discovery responses at issue have not been served and are extremely late.  Therefore, Icon Computing Solutions, Inc. shall respond to outstanding discovery no later than August 13, 2012 or suffer the appropriate sanction.  Should the defendant seek a hearing on this motion, it should immediately contact the Chambers of the undersigned so that a telephone conference may be scheduled.  The moving party shall ensure that the defendant and its attorney are served with a copy of this Order.

(*Id.*; *see also* Doc. 6, the plaintiffs' notice of service.)

On August 10, 2012, at the request of Mr. Massey, the undersigned conducted a telephone conference with the parties.  After conferring with counsel on the record, the Court modified the August 6, 2012 Order to extend the time for ICON to respond to August 20, 2012.  (Doc. 7.)  That order further provided that (1) the responses were to be served without objection since all objections have been waived; (2) if ICON should fail to serve responses as ordered, it shall be subject to appropriate sanctions; and (3) the

plaintiffs' request for costs and fees would be heard once a formal accounting was submitted.  (*See id.*)

On August 21, 2012, the plaintiffs filed a motion for civil contempt and sanctions (Doc. 8), which informed the Court that ICON had failed to comply with the Court's August 10, 2012 Order, and, because of this noncompliance, the undersigned ordered ICON to respond and set a hearing for September 5, 2012 to allow ICON and its counsel an opportunity to "fully explain why they did not comply with the Court's August 10, 2012 Order and why they should not be held in contempt and/or sanctioned for their failure to comply with an order of the Court" (Doc. 9).[2]

As a result of the September 5, 2012 Hearing, which Messrs. Bangs and Massey attended in person and in which counsel for the plaintiffs participated telephonically, the undersigned set forth specific deadlines to facilitate the completion of the post-judgment discovery (*see* Doc. 15 at 2-3); the first deadline, requiring the submission of sworn responses to the pending interrogatories, was September 12, 2012 (*see id.* at 2).

---

[2]     Prior to the hearing, Mr. Massey filed, on August 24, 2012, a motion "for a clarification of his role as it related to [the defendant]" (Doc. 10).  In the September 7, 2012 Order (Doc. 15), entered after the hearing, the undersigned granted Mr. Massey's motion and held,

> Mr. Massey is, until such time that he moves to withdraw, and the Court grants that request, *see generally* S.D. ALA. L.R. 83.5, counsel of record for the defendant, Icon Computing Solutions, Inc. d/b/a Icon Pareto, and Mr. Bangs, in his capacity as chief executive officer of Icon.

> It is evident, based on the record in this case, including the testimony given at the September 5, 2012 Hearing, that Mr. Massey has acted as counsel for the defendant and its CEO.  He assisted the defendant upon its receipt of the post-judgment discovery requests, communicated with the plaintiffs' counsel on behalf of the defendant with regard to those requests, initiated the conference with the Court and the parties on August 10, 2012 (*see* Doc. 7), and communicated with the Court on behalf of the defendant with regard to the defendant's August 30, 2012 attempt to answer the pending post-judgment interrogatories (*see* Doc. 12).

(*Id.* at 3-4.)  Mr. Massey filed a withdrawal motion (Doc. 18) on September 12, 2012, citing the filing of the bankruptcy petition as grounds, but that motion remains undecided pending a ruling on the petition for expenses and attorneys' fees (*see* Doc. 21 at 2).

But on that date, the Court was informed, instead, that the defendant filed a petition for relief under Chapter 7 of the Bankruptcy Code (Case Number 12-03148, pending in the United States Bankruptcy Court for this District) (*see* Doc. 17) and, as such, the enforcement proceedings should be stayed pursuant to 11 U.S.C. § 362(a)(1).

On September 17, 2012, pursuant to the Court's September 14, 2012 Order (Doc. 19), the plaintiffs informed the Court "that they will pursue their remedies against [the defendant,] Icon[,] in the United States Bankruptcy Court for the Southern District of Alabama" (Doc. 20), but also asserted

> that [they] should be entitled to recover their reasonable expenses, including attorneys' fees, incurred in obtaining the order to compel and the order for sanctions from Icon's attorney of record, [Mr. Massey, and] request[ed] that the Court permit [them] to submit a fee petition for fees incurred as a result of Mr. Massey's failure to comply with the Court's orders.

(*Id.*)   The undersigned agreed to allow the plaintiffs to "pursue Mr. Massey individually" (Doc. 21 at 1 (citing FED. R. CIV. P. 37(b)(2)(C)[3], which lead to the filing of the plaintiffs' petition (Doc. 22) and Mr. Massey's response (Doc. 23).

Attorneys' Fees Analysis

Pursuant to Rule 37, if a motion to compel—such as the plaintiffs' August 3, 2012 Motion (Doc. 4), made pursuant to Rule 37(a)(3)(B)—is granted,

> the court **_must_**, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, **_the party or attorney advising that conduct, or both_** to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.  But the court must not order this payment if:

---

[3]         That provision provides that, "[i]nstead of or in addition to the orders above, the court must order the disobedient party, **_the attorney advising that party_**, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  *Id.* (emphasis added).

**(i)** the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;

**(ii)** the opposing party's nondisclosure, response, or objection was substantially justified; or

**(iii)** other circumstances make an award of expenses unjust.

FED. R. CIV. P. 37(a)(5)(A) (emphasis added); *see also Harvey v. West Acquisitions & Inv. Group, Inc.*, No. 07-61265-CIV, 2008 WL 268602, at *3 (S.D. Fla. Jan. 29, 2008) ("In discussing the intent of [the rule], the Advisory Committee Notes to the 1970 amendments to Rule 37 stated, 'The change requires that expenses be awarded unless the conduct of the losing party or person is found to have been substantially justified.'") (citations omitted).

The plaintiffs seek "fees and expenses in the amount of $3,595.00[,]" an amount they contend "does not reflect the full amount of the fees and expenses incurred in association with Plaintiffs' necessary and reasonable efforts to compel Icon's cooperation with post-judgment discovery," but nevertheless "represents a fair and reasonable sanction" against Mr. Massey.  (Doc. 22 at 2-3; *see also* Doc. 22, Ex. A, Hammond Decl. (attesting to reasonableness and necessity of the time expended); Ex. 1 to Hammond Decl. (pertinent time entries for Attorneys Daniel J. Martin and Natalie A. Cox).)

In his response to the petition (Doc. 23), Mr. Massey does not take issue with the reasonableness of the plaintiffs' attorneys' fees, but, instead, sets forth details regarding his relationship with Mr. Bangs, whom he met through members of his church.  After meeting Mr. Bangs, Mr. Massey became an investor in the business that later became ICON, and Mr. Massey further explains,

From the beginning of ICON . . . , a small group of investors initially helped Mr. Bangs get started.  As the only attorney in the group, Mr. Bangs looked to me to review contracts and negotiate disputes.  I was

> never paid for my services, but I did the work to help the company toward what I though would result in a successful business. I invested my own time and money to try to keep the company going and protect myself and my friends from what has eventually happened.

(*Id.* at 3.)  In requesting that the fee petition be denied, Mr. Massey goes on to assert that he never "engage[d] in any action to improperly frustrate the actions of the Plaintiff in seeking discovery"; worked with the plaintiffs' counsel, Mr. Martin, to resolve this matter based on "information Mr. Bangs gave me concerning potential investors"; "advised Mr. Bangs of the seriousness of the discovery process and noted that his answers had to complete and accurate"; and "had nothing to do with Mr. Bangs' decision to file for Chapter 7 bankruptcy," asserting that "[i]t would have been completely against [his] interests as a creditor to have advised him to file bankruptcy." (*Id.*)

Because Mr. Massey does not—and cannot—claim that ICON's failure to respond to the discovery was "substantially justified," the undersigned interprets his response as asserting that the "circumstances [here] make an award of expenses unjust." FED. R. CIV. P. 37(a)(5)(A)(iii).[4]  The circumstances here, however, do not make an award of expenses unjust.  As stated above, *see* supra footnote 2, and in a previous order (Doc. 15), it is evident to the undersigned that Mr. Massey has acted as counsel for ICON and Mr. Bangs, as ICON's CEO, in proceedings before this Court.  And because Mr. Massey, as an investor with Mr. Bangs and, according to Mr. Bangs, "a shareholder and large creditor of [ICON]" (Doc. 23-1), has a pecuniary interest in this litigation, it

---

[4]       As this Court has explained, "[d]etermining whether the respondent's defense is 'substantially justified' requires that the court's focus '. . . must be on the quality of the justification and the genuineness of the dispute; where an impartial observer would agree that a party had good reason to withhold discovery then such a justification is "substantial."'"  *Cal Dive Int'l, Inc. v. M/V Tzimin (ex Stena Seahorse)*, 127 F.R.D. 213, 217 (S.D. Ala. 1989) (Brown, C.J., sitting by designation, affirming the undersigned's award of attorneys' fees) (quoting *Alvarez v. Wallace*, 107 F.R.D. 658, 662 (W.D. Tex. 1985)).

cannot properly be said that Mr. Massey has undertaken this representation *pro bono*. But, even if that was the case, such a representation does not absolve an attorney from being held accountable under the Federal Rules of Civil Procedure and orders issued by this Court.   *See, e.g., Xu Yong Lu v. Ashcroft*, 259 F.3d 127, 135 (3rd Cir. 2001) ("An attorney's obligation to his client is not diminished by the pro bono nature of his representation."); *Goldstein v. Costco Wholesale Corp.*, 337 F. Supp. 2d 771, 778-79 (E.D. Va. 2004) (contemplating the extreme step of sanctioning pro bono counsel the court characterized as "determined to cause delay and try [its] patience[,]" noting that "[p]ro bono attorneys are not above being sanctioned") (citing *Xu Yong Lu*).

As such, because Mr. Massey has been given "an opportunity to be heard," the undersigned **_must_** follow the dictate of Rule 37(a)(5)(A) and **_require_** ICON/Mr. Bangs, Mr. Massey, or both "pay [the plaintiffs'] reasonable expenses incurred in making the [August 3, 2012 Motion (Doc. 4)], including attorney's fees." *Id.*[5]

### A.     Lodestar

"Courts typically use the lodestar method to calculate an award of expenses and attorney's fees as a sanction under Rule 37 against a party failing to comply with a discovery order." *Shulman v. Chromatex, Inc.*, Civil Action No. 3:CV–08–0229, 2012 WL 4793763, at *3 (M.D. Pa. Oct. 9, 2012) (citations omitted); *see also Edelen v. Campbell Soup Co.*, 265 F.R.D. 676, 693 (N.D. Ga. 2010) (citing *Smith v. Atlanta Postal Credit Union*, 350

---

[5]     Even though Mr. Massey was on notice, through the Court's September 18, 2012 Order (Doc. 21), that the plaintiffs were pursuing him individually and that order explicitly requested Mr. Massey's response (*see id.* at 2), a motion brought pursuant to Rule 37, like the motion to compel filed by DCI/Brillcast, automatically places an attorney on notice that the Court could impose "sanctions against the individual attorney . . . or counsel in general." *Triple-I Corp. v. Hudson Assocs. Consulting, Inc.*, No. 06–2195–EFM, 2009 WL 2162204, at *1 (D. Kan. July 17, 2009) (motion brought pursuant to Rule 37(b)(2)(C), which like Rule 37(a)(5)(A), requires the court to order either a party, its attorney, or both to pay reasonable expenses, including attorney's fees).

Fed. App'x 347 (11th Cir. Sept. 28, 2009) (per curiam) for the proposition that a district court calculates reasonable attorneys' fees as a sanction under Rule 37 pursuant to the lodestar method).

The lodestar figure is simply "the product of the number of hours reasonably expended to prosecute the lawsuit multiplied by a reasonable hourly rate for work performed by similarly-situated attorneys in the community."  *Young v. International Paper Co.*, Civil Action No. 10–179–CG–M, 2012 WL 37647, at *4 (S.D. Ala. Jan. 6, 2012) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Norman v. Housing Auth. of the City of Montgomery*, 836 F. 2d 1292, 1299 (11th Cir. 1988)).

### 1.    Requested Attorneys' Fees

|  | Requested hours | Requested hourly rate | Requested total |
|---|---|---|---|
| Martin | 4.1 | $230.00 | $943.00 |
| Cox | 13.6 | $195.00 | $2,652.00 |
| **TOTAL** |  |  | **$3,595.00** |

### 2.    Hours

While Mr. Massey does not explicitly contest the hours requested, the undersigned finds some of those hours to be excessive given the relatively noncomplex nature of these proceedings.  Accordingly, the hours Attorneys Martin and Cox expended in preparing motions, responses, and replies related to the motion to compel should be reduced by fifty percent.  The time entries related to Court conferences and conferring with opposing counsel shall not be reduced.[6]  *See Young*, 2012 WL 37647, at

---

[6]    Specifically, 5.90 hours billed on August 3 by Attorney Cox is reduced to 2.95 hours; 0.30 hours billed by Attorney Martin on August 20 is reduced to 0.15 hours; 2.80 hours billed by Attorney Cox on August 21 is reduced to 1.40 hours; 1.90 hours billed by Attorney Cox on August 28 is reduced to .95 hours; 0.40 hours billed by Attorney Martin on August 29 is reduced to 0.20 hours; 2.50 hours billed by Attorney Cox on August 29 is reduced to 1.25 hours;

*4 ("Where the rates or hours claimed seem excessive or lack the appropriate documentation, a court may calculate the award based on its own experience, knowledge, and observations.") (citations and internal quotation marks omitted).

### 3.    Hourly Rate

"Although the attorney's usual billing rate provides a starting point, this is not dispositive of whether the requested rate is reasonable." *Shulman*, 2012 WL 4793763, at *3.  Judge Granade, in *Young*, recently recounted reasonable hourly rates charged by Mobile attorneys, as found by this Court in 2010 and 2011—$250 to $350 per hour for "top Mobile lawyers in complex cases"; $250 per hour "for an attorney with 15 years experience as a law firm partner"; $200 per hour "for an attorney with seven years experience as a law firm associate"; and $150 per hour "for an attorney with three years experience as a law firm associate[.]"  2012 WL 37647, at *5 (finding that the prevailing defendant's counsel's "proposed" rates—$220 per hour for a partner with 27-years experience; $190 per hour for partners with 15-years experience; and $150 per hour for an associate with three years experience—to be reasonable) (citations omitted).

The undersigned takes judicial notice that Attorney Martin is an associate with approximately eight years experience (he was admitted to the Michigan Bar in 2004 and the Alabama Bar in 2011) and Attorney Cox is an associate with approximately four years experience (she was admitted to the Alabama Bar in 2008).[7]  Accordingly, the

---

and 1.30 hours billed by Attorney Martin on August 31 is reduced to 0.65 hours.  Further, the undersigned finds that the plaintiffs are not entitled to recoup the 0.50 hours Attorney Cox billed, drafting correspondence to opposing counsel regarding overdue discovery responses, on July 18, 2012, prior to the filing of the motion to compel on August 3, 2012.  (*See* Doc. 22 at 10.)

[7]     This information was obtained from a review of their law firm's website and websites for the Alabama and Michigan state bar associations.

undersigned determines that the requested $230 is an appropriate hourly rate for Attorney Martin, but finds that Attorney Cox's hourly rate should be reduced to $150.

### 4.     Adjusted Lodestar

|  | Adjusted hours | Adjusted hourly rate | Adjusted lodestar |
|---|---|---|---|
| Martin | 3.1 | $230.00 | $713.00 |
| Cox | 6.55 | $150.00 | $945.00 |
| **TOTAL** |  |  | **$1,695.50** |

### B.     Responsible Party

One issue remains.  While there is no excuse for leaving it to a layperson like Mr. Bangs to respond to requests for discovery in a lawsuit, *see, e.g., Cal Dive Int'l, Inc. v. M/V Tzimin (ex Stena Seahorse)*, 127 F.R.D. 213, 216 (S.D. Ala. 1989),[8] which—based on testimony at the September 5, 2012 Hearing and on Mr. Massey's response (*see* Doc. 23 at 3[9])—appears to possibly have been the case here, it is not completely clear that the failure to respond to the propounded discovery is entirely Mr. Massey's fault.

"It is well settled that, to the extent possible, attorney fee awards under Rule 37(a) should be imposed only upon the person or entity responsible for the conduct

---

[8]     There, the Court noted a "most spectacular incident" of leaving to a layperson, unsupervised, the task of responding to requests for production of documents:

> The duty of production fell to Captain Goran Hansson whose testimony at the sanction hearing was a revelation of how the production of documents proceeded.  He was simply given a list of Cal Dive's requests and set about to copy and produce those documents *he deemed* responsive to the requests.  It was a *"learning experience "* for him and each time the Court would order more documents produced, his job became a little clearer.  He gave no indication that he was aided in his task by any of the lawyers working for Stena/Concordia.

*Id.* (emphasis in original).

[9]     The response, in part, provides, "I advised Mr. Bangs of the seriousness of the discovery process and noted that his answers had to complete and accurate.  As Mr. Bangs pointed out in a letter supporting this response, he felt the task exceeded *his ability to perform*." (*Id.* (emphasis added).)

giving rise to the fee award."  *Meridith v. Great Wolf Lodge of Kansas City, LLC*, Civil Action No. 07-2529-DJW, 2008 WL 5109764, at *1 (D. Kan. Dec. 2, 2008) (footnote and citations omitted) (holding that because "[t]he sanctioning of a party, as opposed to the party's counsel, requires specific findings that the party was aware of, and/or responsible for, the wrongdoing[,]" where "nothing in the record indicat[ed] that Plaintiffs were aware they owed Defendant discovery responses or that they were responsible for making the decision to not answer the discovery requests at issue in the Defendant's Motion to Compel[,] . . . the fee award should be imposed against Plaintiffs' counsel rather than Plaintiffs themselves"); *see also Worldcom Network Servs., Inc. v. Metro Access, Inc.*, 205 F.R.D. 136, 144 (S.D.N.Y. 2002) ("The reason the sanction is imposed on counsel rather than the party is because the failures here are attributable solely to counsel and not to any noncompliance by Metro itself.") (citations omitted); *McCoo v. Denny's Inc.*, 192 F.R.D. 675, 697 (D. Kan. 2000) ("To the extent possible, sanctions should be imposed only upon the person or entity responsible for the sanctionable conduct. . . .  In the absence of any evidence that Denny's was responsible for the unsupported objections made here, the Court finds it appropriate to hold Denny's counsel solely responsible for paying the monetary sanctions.") (citations omitted); *accord Starlight Int'l, Inc. v. Herlihy*, 190 F.R.D. 587, 593-94 (D. Kan. 1999); *cf. Shipes v. Trinity Indus.*, 987 F.2d 311, 323 (5th Cir. 1993) ("Under Rule 37(b), [the attorney] may be personally liable for reasonable expenses, including attorneys' fees, caused by ***his*** failure to comply with a discovery order.") (citing *Batson v. Neal Spelce Assoc., Inc.*, 765 F.2d 511, 516 (5th Cir. 1985)) (emphasis added).

Mr. Massey did not appear as counsel for the defendant in the Western District of Michigan Lawsuit that resulted in the entry of a default judgment.  Further, the record before this Court makes it clear that, although he may have received assistance

12

from his investors, such as Mr. Massey, Mr. Bangs played an active role with regard to dealing with post-judgment discovery requests.  Mr. Massey played a part too, but it is clear that the defendant's "failures [with regard to compliance with post-judgment discovery] are [not] attributable solely to counsel[.]"  *Worldcom Network Servs.*, 205 F.R.D. at 144.  Therefore, the Court will apportion responsibility for payment of the attorneys' fees awarded to the plaintiffs pursuant to Rule 37(a)(5)(A) fifty percent to the defendant and fifty percent to Mr. Massey individually.[10]

Conclusion

It is therefore **ORDERED** that Mr. Massey shall pay the plaintiffs **$847.75** in "reasonable expenses incurred in making [their August 3, 2012 Motion to Compel (Doc. 4)], including attorney's fees."  FED. R. CIV. P. 37(a)(5)(A).

It is **FURTHER ORDERED** that a ruling on Mr. Massey's motion to withdraw as counsel for ICON (Doc. 18) is **HELD IN ABEYANCE** until the Court has been informed through a filed notice that the attorneys' fee issue that is the subject of this order has been resolved.

**DONE and ORDERED** this the 2nd day of November, 2012.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

---

[10]    Any award against the defendant, protected by the automatic stay entered pursuant to 11 U.S.C. § 362(a)(1), is, however, purely academic. "[T]he filing of a bankruptcy petition automatically 'stays the continuation of any judicial proceeding ***against the debtor*** that was commenced prior to the filing of a case under Title 11[,]'" *Esso Exploration & Prod. Chad, Inc. v. Taylors Int'l Servs. Ltd.*, No. 06 Civ. 4401(RMB)(MHD), 2008 WL 4185748, at *1 (S.D.N.Y. Sept. 3, 2008) (quoting *In re Braught*, 307 B.R. 399, 403 (Bankr. S.D.N.Y. 2004)) (emphasis added), and applies "to discovery requests as well as merits adjudications, including post-judgment requests that are aimed to enforce a 'money judgment [which] would give [one creditor] preferential treatment to the detriment of all other creditors[,]'" *id.* (quoting *Brock v. Morvsville Body Works, Inc.*, 829 F.2d 383, 389 (3d Cir. 1987)).